## DAVID R. FRASER ET AL.

### v.

## CHARLES H. HOLLENBERG ET AL.

*Contract—Mining Machinery—Millwright—Employment of—Damages.*

Under a contract to furnish a competent millwright to set up a silver mill and its machinery, the party furnishing such millwright can not be charged on account of damages arising from his employment for purposes other than those embraced in the contract.

[Opinion filed February 13, 1889.]

APPEAL from the Superior Court of Cook County; the Hon. JOHN P. ALTGELD, Judge, presiding.

Messrs. TATHAM & WEBSTER and MILLARD & SMITH, for appellants.

Mr. GEORGE F. WESTOVER, for appellees.

GARY, J.    December 29, 1885, the appellants, who are manufacturers of machinery, made to the appellees, and they accepted, a proposition, the material parts of which for the present purpose, are :

CHICAGO, Dec. 29, 1885.

PHIL. S. SHUFELDT & Co., 56 Honore Block, City.

*Gentlemen:* We hereby agree to furnish you all the machinery described by attached sheets of specifications for the sum of nine thousand ($9,000) dollars, which we intend as covering a perfect and complete mill, errors or omissions in specifications notwithstanding.    We are to furnish all drawings, both general and in detail, showing proper erection of mill, placing machinery, grading, etc., without extra charge; we are also to furnish the services of a competent millwright to superintend mill erection and placing of machinery at your expense for his salary, which is not to exceed three hundred ($300) dol-

lars per month; you are also to pay traveling expenses of mill-wright to the mines and his board while engaged with you. The millwright to stand his own traveling expenses in returning.

In making drawings, the details of shafting, etc., may be to some extent changed from these specifications.

Yours truly,

FRASER & CHALMERS,

Per W. J. Chalmers.

SPECIFICATIONS.

For Ten Stamp Wet Crushing Silver Mill for Phil. S. Shufeldt & Co.

It is understood that these specifications are intended to cover a complete mill in every respect in accordance with the plans designed by Fraser & Chalmers, errors or omissions in specifications notwithstanding. It is also understood that the plans, general and in detail, are to be considered as forming part of this contract. It is the intent of these specifications to cover everything necessary for the complete mill in accordance with said plans. It is understood that all of the machinery shall be of the very best quality, constructed from the best of material in a thorough and workmanlike manner. * * *

Water Wheel:

1 33″ Leffel special water wheel with all fixtures and fittings complete; 30 ft. of 48″ sheet iron water pipe for above wheel.

1 elbow 48″ for above water pipe.

&ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast;

Two days afterward the appellants submitted to the appellees a proposition for additional articles, having no reference to this controversy, which appellees accepted in these words:
Messrs. F. & C.

*Gentlemen:*—We hereby accept the above proposition, it being agreed that we are to dispense with use of thirty feet of iron pipe in original specifications, and use instead a wooden penstock, and credit us the difference between cost of said $120 bolts and the cost of thirty feet of iron pipe.

Yours truly,

PHILIP S. SHUFELDT & Co.

There is a dispute as to which party suggested the change from pipe to penstock and it is not clear to the court exactly what difference it made in the manner by which the water was to reach the wheel. The whole controversy now is upon that clause of the original proposition, "we are also to furnish the services of a competent millwright to superintend mill erection, and placing of machinery, at your expense for his salary." A few days later appellants furnished a drawing showing the wheel, walls at a little distance from it, on each side a penstock, and a portion of a flume connecting with the penstock, such portion being on a side elevation seven feet long, and on a plan thirteen, according to the scale shown on the drawing. The damages awarded are exclusively for the alleged insufficiency of the flume. The mill is about half a mile from the water supply; next to the mill is 400 feet of flume, then ditch of 800 feet, then another flume 600 feet and then another ditch of about 800 feet to the dam.

Construing, as this court does, the obligation of the appellants to be confined to the erection of the mill buildings, and the placing the machinery in it, and that if the appellees employed for any other purpose the millwright sent by the appellants they did so upon their own account and risk, there is nothing left of the case.

When the contract, which, being in writing, the court must construe, was made, there was nothing in it, taking the proposition and specifications together, alluding to a flume, or to any article to be furnished by appellants having any relation to the introduction of the water, except thirty feet of pipe and an elbow.

Admit that the appellants were responsible that the man they sent should properly place that pipe and elbow, they could not have been held further, unless the words "mill erection and placing of machinery" include more than the words express; and if they are to be extended, as appellees in effect claimed in the Superior Court, to whatever was necessary to the working or efficiency of the mill, then the dam and ditches as well as the flume ought to come in.

The contract now means what it did when it was made. If the pipe and elbow had not been dispensed with, no such draw-

ing as is now presented, showing penstock and portion of the flume, would ever have been made.

The position of the appellees that the flume is within the contract, seems more plausible, from the fact that the appellants furnished a drawing of a small part of it; but in fact, that position is not strengthened by the drawing; for it is of a thing that was not thought of when the contract was made, but brought in by subsequent alteration.

The judgment must be reversed, but it is of no use to remand the cause, for if this court is right, the appellees have no cause of action; if this court is wrong, the appellees can now go to the Supreme Court and save their verdict, unless some other point not touched here should affect them. Chicago v. Gage, 95 Ill. 593.

*Judgment reversed.*